UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KALDREN LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-cv-6149 |
| | ) |
| RUST-OLEUM CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF RUST-OLEUM CORPORATION'S
<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**I.  SUMMARY** ......................................................................................................................... 1

**II. STATEMENT OF FACTS** .................................................................................................. 2

    A.    The Parties .................................................................................................................. 2

    B.    The Complaint ............................................................................................................ 2

        1.    Encoding Claims ................................................................................................... 4

        2.    Decoding Claims ................................................................................................... 4

        3.    Communication Claims ........................................................................................ 5

        4.    Related Prior Art ................................................................................................... 5

        5.    Use of Third Party Systems .................................................................................. 5

**III. ARGUMENT** ......................................................................................................................... 6

    A.    The Asserted Claims are Invalid Under 35 U.S.C. § 101 ......................................... 7

        1.    *Alice* Step One - The Claims are Directed at an Abstract Idea ............................ 7

        2.    *Alice* Step Two - The Claims Lack an Inventive Concept .................................. 9

    B.    Rust-Oleum Cannot Infringe the Asserted Claims as a Matter of Law .................. 11

**IV. CONCLUSION** ................................................................................................................... 12


## TABLE OF AUTHORITIES

**Cases**

*02 Media LLC v. Narrative Sci. Inc.*,
149 F. Supp. 3d 984 (N.D. Ill. 2016) (J. Tharp Jr.) ........................................................... 6

*Addiction and Detoxification Inst. L.L.C. v. Carpenter*,
620 Fed. Appx. 934 (Fed. Cir. 2015) ............................................................................... 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) .............................................................................................. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 6, 11

*Bilski v. Kappos*,
561 U.S. 593 (2010) ................................................................................................. 6, 7, 8

*bySafe, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........................................................................................ 10

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................... 6, 8

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ......................................................................................... 6

*Digitech Image Techs. v. Electronics for Imaging, Inc.*
758 F.3d 1344 (Fed. Cir. 2014) ......................................................................................... 8

*Elec. Power Grp. V. Alstom F.A.*,
830 F.3d 1350 (Fed. Cir. 2015) ......................................................................................... 8

*Hatmaker v. Mem'l Med. Ctr.*,
619 F.3d 741 (7th Cir. 2010) ............................................................................................. 6

*In re TLI Communications LLC Patent Litig.*,
87 F. Supp. 3d 773 (E.D. Va. 2015) .................................................................................. 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed Cir. 2017) .......................................................................................... 8

*IQS US Inc. v. Calsoft Labs Inc.*,
2017 WL 3581162 (N.D. Ill. 2017 Aug. 18 2017) (J. Lefkow) ........................................................ 6

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich. Inc.*,
873 F.2d 1422 (Fed. Cir. 1989) .................................................................................................... 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .................................................................................................... 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ................................................................................................................... 9

*Nalco Co. v. Chem-Mod, LLC*,
No. 14-cv-2510, 2015 WL 6122811 (N.D. Ill. Oct. 15, 2015) ..................................................... 12

*Recognicorp LLC v. Nintendo Co.*,
855 F.3d 1319 (Fed. Cir. 2010) .................................................................................................. 7, 8

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
No. 2016-1728, 2017 WL 4582737 (Fed. Cir. Oct. 16, 2017) ............................................. 8, 9, 10

**Statutes**

35 U.S.C. §101 ..................................................................................................................... *passim*

35 U.S.C. §271(a) ........................................................................................................... 1, 2, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1, 6

**I.     SUMMARY**

Plaintiff Kaldren LLC ("Kaldren") initiated this litigation (and nearly forty similar claims against other defendants) by alleging that Defendant Rust-Oleum Corporation ("Rust-Oleum") uses QR codes in violation of Kaldren's recently acquired business method patents concerning formatting digital data into a pattern. In response, Rust-Oleum respectfully requests that this Court dismiss Kaldren's Complaint for patent infringement with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for two reasons.

First, the patents in suit fail the requirements of 35 U.S.C. § 101. The asserted claims of Kaldren's patents-in-suit are directed to an abstract idea, communicating data in a graphical format (pattern), and thus, not patent eligible under 35 U.S.C. § 101. Further the generic processes of encoding, decoding and communicating are not inventive. In fact, the asserted claims are so broad and abstract that Kaldren apparently believes any use of Quick Response ("QR") codes infringes its patents.

Second, even if the asserted claims were valid under 35 U.S.C. § 101, Rust-Oleum still does not infringe the asserted patents under 35 U.S.C. § 271(a). As the claims require "encoding", "decoding" and "communicating." Here, Kaldren fails to allege and cannot allege that Rust-Oleum performs these processes.

Thus, for the reasons set forth herein, Kaldren's Complaint should be dismissed with prejudice.

1

## II.    STATEMENT OF FACTS

### A.    The Parties

Rust-Oleum is a leading manufacturer of premium consumer and industrial paint and coating products with global headquarters located in Vernon Hills, Illinois.

Kaldren is a Texas limited liability corporation which first registered to do business on October 21, 2016. Effective November 1, 2016, Kaldren was assigned each of the four patents-in-suit. Kaldren recorded the patent assignments with the United States Patent and Trademark Office on March 13, 2017. Ten days later, March 23, 2017, Kaldren began filing numerous patent infringement claims. To date, Kaldren has filed approximately forty claims related to the same four patents. None of the cases have progressed beyond the initial pleadings.

### B.    The Complaint

Kaldren asserts that in violation of 35 U.S.C. § 271(a) Rust-Oleum "makes and uses (including testing by Defendant) one or more products that infringe" patent claims 1, 48, and 51-55 of U.S. Patent No. 6,098,882 (Compl. Dkt. 1 Ex. A, hereinafter "the '882 Patent"), claim 26 of U.S. Patent no. 6,176,427 (Compl. Dkt. 1 Ex. B, hereinafter "the '427 Patent"), claim 20 of U.S. Patent No. 6,820,807 (Compl. Dkt 1 Ex. C, hereinafter "the '807 Patent"), and claims 1, 4, 5 and 8 of U.S. Patent No. 8,281,999 (Compl. Ex. D, hereinafter "the '999 Patent") (collectively the "Patents-in-Suit"). (Compl. Dkt. 1 (hereinafter Dkt. 1) ¶¶ 13, 16, 22, 28, 34).

The Patents-in-Suit are all titled "Variable Formatting of Digital Data Into a Pattern". (Dkt. 1 ¶¶ 7-10.). Per the Abstracts, the Patents-in-Suit are directed toward "a method of formatting digital data and a method of decoding digital data" using "user selectable format parameters" to "vary the dimensions and other attributes of spots and the cells containing those spots," which the "formatting process formats into a pattern." ('882 Patent at Abstract; '807 Patent at Abstract; '427

Patent at Abstract; '999 Patent at Abstract). In short, the invention "acts as a channel for digital communication" providing "the ability to link the printed page to the electronic world [and] can be accomplished in any manner in which instructions can be digitized." ('882 Patent at 50:12-14; '427 Patent at 50:20-22; '807 Patent at 50:14-16; '999 patent at 49:24-26).

Of the thirteen claims:

- Seven claims relate to a "method of encoding data" or "a method of encoding digital data".

  ('882 Patent at 2205:2 (cl. 1), 2211:3 (cl. 48), 2211:20-32 (cls. 51-55)).

- Two claims relate to a "method of decoding digital data" or "retrieving an information resource".

  ('427 Patent at 57:13-25 (cl. 26); '807 Patent at 52:16-23 (cl. 20)).

- And four claims relate to a "communication system.

  ('999 Patent at 50:25 (cl. 1), 50:43-47 (cls. 4-5), 51:10-22 (cl. 8)).

Similar to the other nearly forty matters filed in the past six months, Kaldren alleges that "Defendants Accused Product is its Quick Response (QR) codes that it uses with its products and services." (Dkt. 1. at ¶14.) And similar to each of its other complaints, Kaldren provides a cookie-cutter claim chart that purports to show how Rust-Oleum's use of QR codes satisfies each limitation of the asserted claims. The charts provide images of Rust-Oleum materials using a QR code and then relies on the definitional standards for QR codes to imply infringement. (Dkt. 1 Exs. E-H). Notably, Kaldren does not allege that Rust-Oleum encodes the QR codes, that Rust-Oleum decodes the QR codes, or that Rust-Oleum communicates the QR codes as described in the Patents-in-Suit.

### 1. Encoding Claims

The purported invention is achieved "by a method of formatting digital data into a pattern where the pattern comprises a number of cells (i.e., predetermined spaces in the pattern) with known dimensions where each cell conveys at least one bit of data." ('882 Patent at 4:22-26; '427 Patent at 4:38-42; '807 Patent at 4:38-43; '999 Patent at 4:40-43). Each bit of data represents one of at least two logical states "expressed by the presence of a spot with a given set of attributes in the cell and a second logical state is expressed by the absence of a spot with those attributes from the cell." ('882 Patent at 4:27-30; '427 Patent at 4:42-46; '807 Patent at 4:43-47; at '999 Patent 4:44-47).

To encode the data into an image, the patent includes six steps: 1) specify parameters for formatting; 2) select files to be printed; 3) compression (optional); 4) error correction; 5 formatting; and 6) outputting. ('882 Patent at Fig. 2; 11:18-19). The patents do not identify a novel form of compression affirmatively state that decompression may be accomplished by one of many means known in the art. (*Id.* at 11:19-23).

### 2. Decoding Claims

The decoding process is also generic. At a minimum, the method involves "the steps of scanning (i.e. creating an electronic image of the substrate) and decoding." (*See e.g.* '427 Patent at 27:31-32). But the decoding process may also include error detection, error correction and decompression. (*See e.g.* '427 Patent at 27:32-35).

The Patents-in-Suit also identify steps taken in the encoding process to allow for decoding data, the Patents-in-Suit provide "guideposts" or "markers" that "serve to identify the location of spots on the printed substrate." ('882 Patent at 4:53-56; '427 Patent at 4:65-5:3; '807 Patent at

4

4:66-5:4; '999 Patent at 4:65-5:3). As the Patents-in-Suit note, however, this process is known in the prior art. ('882 Patent at 4:55-56; '427 Patent at 5:3-4; '807 Patent at 5:4-5; '999 Patent at 5:3).

### 3. Communication Claims

The Patents-in-Suit claim a method of communicating digital data. The first two steps, "selection of format parameters" and "formatting" are "generally the same as the method of encoding described and illustrated above." ('882 Patent at 44:42-47; '427 Patent at 44:59-64; '807 Patent at 44:53-58; '999 Patent at 44:2-5). The third step, distribution, is achieved through traditional means of communication, such as facsimile, internet, postal delivery or hand delivery. ('882 Patent at 44:48-57; '427 Patent at 45:1-7; '807 Patent at 44:59-65; '999 Patent at 44:9-16). Once distributed, the recipient decodes the information. ('882 Patent at 45:11-15; '427 Patent at 45:28-29; '807 Patent at 45:22-23; at '999 Patent at 44:37-38).

### 4. Related Prior Art

Although the Patents-in-Suit claim that they allow for the variable formatting of data, the specifications concede that the idea of formatting data into various graphical patterns is not new, and as the Patents-in-Suit note, prior art exists, including bar codes and other two-dimensional codes. ('882 Patent at 1:47-54; '427 Patent at 1:59-66; '807 Patent at 1:60-67; '999 Patent at 1:65-66, 2:1-5). Each specification also concedes that "the prior art discloses methods for placing machine readable information on media, such as paper." ('882 Patent at 1:38-40; '427 Patent at 1:50-52; '807 Patent at 1:51-53; '999 Patent at 1:57-59).

### 5. Use of Third Party Systems

The processes described in the Patents-in-Suit rely on generic third party systems. As the Patents-in-Suit note, "the method and system of the present invention can be implemented on any computer system using any appropriate operating system." ('882 Patent at 9:6-10; '427 Patent at

5

9:21-25; '807 Patent at 9:22-25; '999 Patent at 9:12-15). For example, to print and scan the graphical images, the patents allow for use of a "wide audience of printers and scanners." ('882 Patent at 7:12-14; '427 Patent at 7:28-30; '807 Patent at 7:28-30; '999 Patent at 7:20-22). Thus, the Patents-in-Suit disclose that a standard computer, running the Windows operating system along with an inkjet or laser printer, and a flatbed scanner can perform the claimed invention. ('882 Patent at 8:66-9:6; '427 Patent at 9:14-25; '807 Patent at 9:14-25; '999 Patent at 9:5-12).

## III. ARGUMENT

The Patents-in-Suit are invalid under 35 U.S.C. § 101 and the Complaint also fails to allege infringement by Rust-Oleum; requiring dismissal with prejudice.

To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While at the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

Whether the Patents-in-Suit are directed to ineligible subject matter under 35 U.S.C. § 101 is a "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent eligibility under § 101 is a question of law. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011). And thus the issue may be decided on a motion to dismiss. *See e.g.*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *02 Media LLC v. Narrative Sci. Inc.*, 149 F. Supp. 3d 984, 988 (N.D. Ill. 2016) (J. Tharp Jr.); *IQS US Inc. v. Calsoft Labs Inc.*, 2017 WL 3581162, *5 (N.D. Ill. 2017) (J. Lefkow).

### A. The Asserted Claims are Invalid Under 35 U.S.C. § 101

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court confirmed a two-step framework for determining whether a claim contains patent eligible subject matter under 35 U.S.C. § 101. First, a court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Once a court determines the concept is directed at a patent ineligible concept, the court considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept." *Id.* (internal quotations omitted). Thus, if a claim which relies on an abstract idea does not include any transformative elements, then it does not contain eligible subject matter under § 101 and is invalid as a matter of law. *Id.* at 2360.

#### 1. *Alice* Step One - The Claims are Directed at an Abstract Idea

Patent ineligible concepts include laws of nature, physical phenomena, and abstract ideas. *Bilski*, 56 U.S. at 594. Each of the thirteen claims are directed at the abstract ideas of 1) encoding data into a graphical format, 2) decoding data from a graphical format, or 3) communicating data in a graphical format. ('882 Patent at 2205:2-3 (cl. 1), 2211:3-4 (cl. 48), 2211:20-32 (cls. 51-55); '427 Patent at 57:14-15 (cl. 26); '807 Patent at 52:15-16 (cl. 20); '999 Patent at 50:25 (cl. 1), 50:43-47 (cls. 4-5), 51:10 (cl. 8)). Encoding, decoding and communicating data are abstract ideas. *Recognicorp LLC v. Nintendo Co.*, 855 F.3d 1319, 1326 (Fed. Cir. 2010).

In fact, Courts already recognize that generation and transmission of QR codes is inherently abstract. The Federal Circuit recently affirmed a 12(b)(6) dismissal of a patent infringement claim involving a QR code patent that provides a "method whereby a barcode is generated, affixed to a mail object, and sent through the mail system" as directed to the abstract idea of "communicating information about a mail object using a personalized marking." *Secured Mail Solutions LLC v.*

7

*Universal Wilde, Inc.*, No. 2016-1728, 2017 WL 4582737, *5 (Fed. Cir. Oct. 16, 2017). Similarly here, the idea of communicating data in a graphical format (pattern) is an abstract concept.

Encoding, decoding and otherwise communicating data in a graphical format is comfortably within the range of ideas the law considers abstract. *See e.g.*, *Recognicorp*, 855 F.3d at 1326 (encoding and decoding data is an abstract concept); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340-41 (Fed Cir. 2017) (organizing, displaying and manipulating data encoded for human- and machine-readability is directed to an abstract concept); *Content Extraction and Transmission LLC*, 776 F.3d at 1348 (extracting data from hard documents is an abstract idea); *Digitech Image Techs. v. Electronics for Imaging, Inc.* 758 F.3d 1344, 1347, 1350-51 (Fed. Cir. 2014) (capturing image data and altering it is an abstract idea); *Elec. Power Grp. V. Alstom F.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2015) ("collecting data from multiple sources, analyzing the data, and displaying the results" is abstract).

Nor does the "communication" language in the '999 Patent fare any better. The '999 Patent claims 1, 4, 5 and 8 each recite claims directed to the abstract concept of "decoding a machine-readable code formatted into a two-dimensional pattern." ('999 Patent 50:26-27 (cl. 1), 50:43-45 (cls. 4, 5), 51:10-11 (cl. 8). The claims do add limitations directed to using "communicating means" and "networking means" to communicate with other computers in a network based on decoded data. *Id.* Claims 4 and 5 specify that the network is the "Internet" and the use of a "uniform resource locator". *Id.* 50:43-47. Yet the addition does nothing to make the concepts any less abstract. *See In re TLI Communications LLC Patent Litig.*, 87 F. Supp. 3d 773, 784 (E.D. Va. 2015) ("tying an abstract idea to a general purpose computer or to the internet, without more, is generally insufficient to make an abstract idea patentable").

8

Because each of the claims relate to abstract concepts, the first step in *Alice* is satisfied, and we move to the second.

### 2. *Alice* Step Two - The Patents Lack an Inventive Concept

To claim patent eligibility on an abstract idea, there must be an "inventive concept" defined as an "element or combination of elements that are sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice,* 134 S. Ct. at 2355 (*citing Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)). Thus, the "inventive concept" must transform the claimed abstract into a patent eligible application. *Alice*, 134 S. Ct. at 2357. If, however, as occurs here, a claim does not include any transformative elements, then it is invalid under § 101. *Id.* at 2360. Neither "conventional steps, specified at a high level of generality" nor "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2357-58. Nor does the recitation of the use of a generic computer transform a patent-ineligible abstract idea into a patent eligible invention." *Id.* at 2358.

In *Secured Mail*, the Federal Circuit upheld the district court's dismissal of claims for patent infringement of QR code related patents. *Secured Mail*, 2017 WL 4582737 at *7. In its step two analysis, the Federal Circuit noted that there was nothing unique about encoding a document with a QR code to send to a recipient to display electronic information. *Id.* at *6. Similar to the present circumstances, the Federal Circuit noted that the well-known nature of the technology can be discerned from the patents themselves. *Id.* "The patents mention that the invention can be performed using many types of hardware, including personal computers, set top boxes, personal digital assistances (PDAs), mobile phones, land-line phones, televisions, bar code readers, and all

9

other physically and wirelessly connected reception devices generally known to those skilled in the art." *Id.* (internal citations omitted).

Similarly, here, there is no inventive process. The Patents-in-Issue solve the abstract process of communicating information using a distinct marking by encoding and decoding information using "off-the-shelf personal computers and peripherals." ('882 Patent at 4:4-9). To print and scan the graphical images, the patents allow for use of a "wide audience of printers and scanners." (*Id.* at 7:12-14). Thus the Patents-in-Suit disclose that a standard PC running the Windows operating system along with an inkjet or laser printer and a flatbed scanner can perform the claimed invention. ('882 Patent at 8:66-9:6). As the Patents-in-Suit note, "the method and system of the present invention can be implemented on any computer system using any appropriate operating system." ('882 Patent at 9:6-10). The ability to use a "wide audience of "off the shelf computers and peripherals" simply reaffirms the fact that nothing about the process of encoding, decoding or communicating in the Patents-in-Suit is inventive. *See e.g., bySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims that do not purport to improve the functioning of a computer but merely use a computer to send and receive information are "not even arguably inventive").

In fact, the Patents-In-Suit emphasize the very reason for the *Alice* test. As the Supreme Court explained, "the patent in practice must amount to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. Here, it is simply Rust-Oleum's generic use of the QR codes that triggered Kaldren's claim of patent infringement. (Dkt. 1 ¶¶ 13, 16, 22, 28, 34, Exs. E-H). This is only emphasized by the nearly forty actions filed in the last six months against the use of QR code in a multitude of industries. *See e.g.*, *Kaldren v. Citigroup, Inc.*, (No. 5:17-cv-66 (E.D. Tex.)); *Kaldren v. J.D. Power an Associates* (No. 5:17-cv-68 (E.D. Tex)); *Kaldren v.*

*Procter & Gamble Company* (No. 5:17-cv-71 (E.D. Tex.)); *Kaldren v. Amer. Express Co.* (No. 1:17-cv-3625 (S.D.N.Y.)); *Kaldren v. Wausau Paper Corp.* (No. 3:17-cv-664 (W.D. Wis.)); *Kaldren v. Western States Envelope Co.* (No. 2:17-cv-917 (E.D. Wis.)); *Kaldren v. Anixter* (No. 17-cv-04998 (N.D. IL)).

Because the patents-in-issue fail the *Alice* test, this matter should be dismissed with prejudice.

### B. Rust-Oleum Cannot Infringe the Asserted Claims as a Matter of Law

The Court should also dismiss Kaldren's Complaint for failure to state a valid claim for direct patent infringement under 35 U.S.C. § 271(a) and Kaldren does not plead any other claims. To allege direct infringement of a patent method claim, a plaintiff must plead that the accused infringer performs all steps of the claimed method. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009. The "actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Absent sufficient factual allegations, a Plaintiff fails to give "fair notice" upon which the claim rests. *Id.*

Here, Kaldren merely alleges that Rust-Oleum infringes the asserted patents under 35 U.S.C. § 271(a). Yet Kaldren's conclusory claims fail to meet the pleading standard because there is no allegation that Rust-Oleum performs the limitations of the asserted claims. *Addiction and Detoxification Inst. L.L.C. v. Carpenter*, 620 Fed. Appx. 934, 937 (Fed. Cir. 2015) ("bare allegations that Defendants make, use, sell and offer for sale undefined 'activities, methods and procedures' provide no detail whatsoever that would put Defendants on notice as to what activity, method, or procedure it is alleged to infringe").

For each Patent-in-Suit, Kaldren merely alleges that "Defendant directly infringes [the asserted claims]… by making and/or using (including testing) its Accused Product as shown in

Exhibit [E-H]". (Dkt. 1 ¶¶ 16, 22, 28, 34.). The exhibits merely show that Rust-Oleum used QR codes and then argues a generic QR code satisfies every limitation in the patents-in-suit. Further, the mere reference to "testing" is insufficient to sustain a patent infringement case. *See Nalco Co. v. Chem-Mod, LLC*, No. 14-cv-2510, 2015 WL 6122811 at *4 (N.D. Ill. Oct. 15, 2015).

Notably, there are no allegations that Rust-Oleum encoded, decoded or communicated the packaging. The QR codes could well have been generated by third party suppliers or marketers. The processes of communicating or decoding the packages are done exclusively by the consumers themselves. There is no allegation, or reason, that Rust-Oleum would decode its own packages that is a step for consumers. Similarly, the use of a "communication system" to locate a webpage using the QR codes on Rust-Oleum's packaging is also a step taken by the customer.

Finally, the conclusory reference to the doctrine of equivalents does not save the Complaint. To successfully plead the doctrine of equivalents, there must be some allegation that the alleged infringement meets the three elements of the doctrine, (1) function performed; (2) means by which function is performed; and (3) result achieved. *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich. Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989). Kaldren fails to make such an allegation.

Because Kaldren does not plead and cannot plead sufficient facts to allege direct infringement under § 271(a), Rust-Oleum respectfully requests that this Court dismiss the Complaint with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Kaldren's complaint should be dismissed with prejudice because (i) all of the asserted patent claims are invalid under 35 U.S.C. § 101 and/or (ii) the complaint fails to sufficiently allege a claim for direct patent infringement under 35 U.S.C. § 271(a).

Dated: November 2, 2017						Respectfully submitted,

								Rust-Oleum Corporation


								By:	*/s/ William D. Patterson*
									One of its attorneys


P. Stephen Fardy #6230900
William D. Patterson, #6294533
SWANSON, MARTIN & BELL, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois  60611
(312) 321-9100
sfardy@smbtrials.com
wpatterson@smbtrials.com

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on the 2d day of November 2017, a copy of the foregoing MEMORANDUM IN SUPPORT OF RUST-OLEUM'S MOTION TO DISMISS was filed electronically, notice of which will be sent by operation of the court's electronic filing system to the following counsel of record:

Peter J. Corcoran
Corcoran IP Law, PLLC
2019 Richmond Road, Suite 380
Texarkana, Texas 75503
Tel: (903) 701-2481
Fax: (844) 362-3291
Email: peter@corcoranip.com

Mary K. Schulz
Media Litigation Firm, P.C.
1144 E. State Street, Suite A260
Geneva, IL 60134
Tel: (312) 213-7196
Email: medialitigationfirm@gmail.com

                s/ *William D. Patterson*
                One of the Attorneys for Defendant

P. Stephen Fardy, #6230900
William D. Patterson, #6294533
SWANSON, MARTIN & BELL, LLP
330 North Wabash - Suite 3300
Chicago, Illinois 60611
(312)321-9100
(312)321-0990 fax
sfardy@smbtrials.com
wpatterson@smbtrials.com